William Lyman, J.
The defendant having heretofore been convicted by jury verdict of robbery, first degree, grand larceny, second degree, and two counts of assault, second degree, now moves for a new trial upon the ground of newly discovered evidence as provided under subdivision 7 of section 465 of the Code of Criminal Procedure.
It is claimed for the defendant that at the time of the incidents upon which the convictions herein are predicated, i.e., between 2:15 p.m. and 2:30 p.m. of March 24, 1958, he was in the living room of his father’s apartment which was some 10 minutes’ walk from the scene of the crime; that because of his mental incapacity, having subsequently been determined by medical experts and the court to be a “ mid-grade ” moron, he failed to disclose such proof to his trial counsel; that this counsel, who was assigned by the court, was limited in his investigation facilities and was therefore not negligent in failing to advance an ‘ ‘ alibi ’ ’ defense at the trial.
In support of the new trial urged, five affidavits are submitted in behalf of the defendant allegedly establishing that Kenneth Swanston was in his home during intervals varying from 1:30 p.m. to 3:00 p.m. of the day in question and that he was there continuously with the exception of a five-minute period.
One of these 'affiants, Mary Williams, a boarder in the Swanston home, states that Kenneth was in his father’s living room from 1:30 p.m. to 2:30 p.m. on March 24, 1958. Another affiant, one Margaret McFadden, deposes that she met the Williams woman, her friend, at the Morrisania Health Center early that morning and accompanied her to the Swanston home to celebrate the latter’s birthday, arriving there at about 10:00 a.m. She corroborates the presence of Kenneth during the time mentioned by Mary Williams. Annette Swanston, a sister of the defendant, swears that Kenneth was present in her father’s apartment from 1:30 p.m. to 3:00 p.m. on the day in question. Another sister, Cynthia Boyd, asserts that her brother Kenneth was home while .she was visiting her father, until 2:15 p.m. when she left. Edward Swanston, the father, avers that Kenneth was in his living room at 2:00 p.m. of March 24, 1958, when the deponent left to go to the market. All seem to agree that Kenneth received permission from his father to leave the house for an errand at about 12:30 p.m. but that he returned some five minutes later. In further support of a new trial, the defense *839 also presents the affidavit of one of the codefendants herein, Ralph Boone who was acquitted by the jury, and other affidavits relating to statements made by three juveniles (one a brother of Kenneth Swanston) who were implicated in the instant crimes and now in correctional institutions, all vouching for Kenneth’s absence from the park playground at the time the crimes were committed.
The rule of law applicable to the determination of the question whether a new trial should be granted upon the ground of newly discovered evidence is as follows: The newly discovered evidence must establish: 1. that it is such as will probably change the result if a new trial is granted; 2. it must have been discovered since the trial; 3. it must be such as could not have been discovered before the trial by the exercise of due diligence; 4. it must be material to the issue; 5. it must not be cumulative to the former issue; 6. it must not be impeaching or contradicting of the former evidence (People v. Priori, 164 N. Y. 459).
Since all of the components of the said rule of law are required to be established in order to warrant relief (People v. Salemi, 309 N. Y. 208), its application to the facts of the instant case discloses that the claimed new evidence would not have changed the verdict of the jury since the presence of Kenneth Swanston at the scene of the crime was a trial issue and adjudicated adversely to the moving defendant. Secondly, this alleged new evidence was not discovered since the trial inasmuch as it was known to the defendant at the time of his trial. The argument that the defendant cannot be held responsible for failure to divulge it at his trial, because of his mental deficiency, is untenable in view of the findings of the court at a hearing to controvert the Bellevue Hospital report herein that the defendant was a moderate moron and capable of understanding the criminal proceeding against him and of making his defense thereto. Thirdly, this alleged new evidence could have been discovered by the defendant by the exercise of due diligence. Fourth, grouping the remaining elements of the applicable rule, the claimed newly discovered evidence is immaterial to the issue of the defendant’s guilt, being cumulative and merely impeaching or contradicting the testimony of the People’s witnesses at the trial who connected Kenneth Swanston with participation in the crimes charged in the indictment. Besides, this defendant admitted his connection with these crimes to the arresting officer and this admission was trial evidence and weighed by the jury in determining their verdict. In sum, the purported new proof urged in support of a new trial, simply *840 attempts to relitigate the issue of the guilt of Kenneth Swanston. Moreover, in connection with the alleged alibi, it is inconceivable and wholly improbable that the moving defendant’s father, his sisters and the Swanston boarder, now so alert and concerned in protecting the defendant, were all disinterested in the evidence adduced at his trial and dormant as to the significance of the time element fixed in the commission of the crime herein. It is with humaneness that their depositions are characterized as being founded upon an honest error.
In any event, an ‘ ‘ alibi ’ ’ defense has no legal value as a basis for a new trial upon the ground of newly discovered evidence (People v. Giordano, 144 Misc. 108).
Accordingly, the motion is in all respects denied.